* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Deluca with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the subject of this claim; *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties;
3. On the alleged date of injury, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. Wake County Public School System is self-insured.
6. Plaintiff's alleged date of injury is February 25, 2003.
7. The following documents were received in evidence at the hearing of this case before the deputy commissioner:
 a. Stipulation #1-Pre-Trial Agreement
 b. Stipulation #2 — Medical Records
 c. Stipulation #3 — Industrial Commission Forms
8. The following depositions were received in evidence before the deputy commissioner in this case:
 a. Jacqueline Smith (May 10, 2006)
 b. Emily Hass, M.D. (May 24, 2006)
 c. Fathima N. Kabir, M.D. (June 30, 2006)
 d. Daniel James Albright, M.D. (July 13, 2006)
 e. Martha Freeman (August 29, 2006)
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows: *Page 3 
 FINDINGS OF FACT
1. Plaintiff is a teacher with a B.A. in Music from San Jose State University and a Master's Degree in Special Education. Plaintiff is currently 62 years of age with a date of birth of June 14, 1945.
2. Plaintiff has been a teacher for more than thirty (30) years. Plaintiff became employed with defendant in 1999. She worked there for four years prior to her injury. On February 25, 2003 plaintiff worked for defendant as a reading teacher for children with learning disabilities and behavioral issues. Plaintiff was not assigned to a specific school. Rather, she would travel to several different schools on a daily basis to provide her teaching services.
3. On February 25, 2003 plaintiff drove to Dillard Drive Middle School in the course of her employment. Plaintiff parked in the parking lot for visitors and slipped and fell on her left side on ice after exiting her car.
4. Jacqueline Smith worked at Dillard Drive Middle School on February 25, 2003. She observed plaintiff fall on that date in the visitor's parking lot. Plaintiff told Ms. Smith that she may have injured her knee and said that she would have it checked out. Ms. Smith did not see any bruises, abrasions, or problems with plaintiff's clothing after the fall. She did notice plaintiff limping. Ms. Smith does not recall whether plaintiff continued to work after the accident. Ms. Smith reported that her knowledge would have been better in 2003. Further, Ms. Smith did not know anything about plaintiff's health before the fall.
5. Ms. Smith is not a supervisory or management employee with defendant. She does not know whether plaintiff reported her fall to the principal or anyone else. On February 25, 2003, no one contacted Ms. Smith to ask her any questions about the fall. Nor is there any other indication that plaintiff or Ms. Smith reported the fall to defendant. *Page 4 
6. Plaintiff alleged she informed defendants of her fall in September 2003, and that she did not notify defendants earlier because she did not realize the seriousness of her injury and was not aware that she should file a workers' compensation claim. However, the greater weight of the evidence shows that in September 2003, plaintiff informed her supervisor only of her possible need for surgery and failed to relate her need for surgery to a work related injury.
7. On March 31, 2003, plaintiff was seen at the Internal Medicine Clinic at Duke University Medical Center in Durham. Plaintiff saw Dr. Lauren Caram, a resident, under the direction of Dr. Emily Haas. Plaintiff had established a new patient-physician relationship with the Internal Medicine Clinic in January 2003 for the purpose of losing weight. In January 2003, plaintiff had complained of left leg, foot and knee pain secondary to an injury in 1997. On March 31, 2003, plaintiff complained of pain in her left hip following a fall 6 weeks prior. X-rays of the left hip revealed osteoarthritis. Plaintiff was treated conservatively with Tylenol, Aleve anti-inflammatory, and some physical therapy. Dr. Haas testified that plaintiff's osteoarthritis pre-existed the fall and that if plaintiff ambulated differently, the fall could have exacerbated her left hip discomfort. Upon further review of the medical records, Dr. Haas stated that examination of plaintiff did not reveal an altered gait and that plaintiff had no sensory or motor loss. In addition, plaintiff did not report left knee pain in March 2003, and there was no indication that the fall on the ice caused any problem with plaintiff's right hip. Dr. Haas did not take plaintiff out of work and does not believe that their medical treatment was billed to workers' compensation.
8. On April 24, 2003, plaintiff saw Dr. Fathima N. Kabir, a rheumatologist, for the first time. Plaintiff gave a history of pain in her left hip, going down her leg, and also a sore left foot, which she had for about a year and which had worsened around February 2003. Dr. Kabir *Page 5 
found that there was no inflammation in plaintiff's joints and no signs of lupus or rheumatoid arthritis. Dr. Kabir ordered x-rays of plaintiff's spine and hip which revealed multi-level degenerative disc disease in her back and osteoarthritis in plaintiff's hip. No x-ray was requested of plaintiff's left knee. Dr. Kabir referred plaintiff for orthopaedic consultation because plaintiff's problems were orthopaedic in nature.
9. Dr. Kabir testified that osteoarthritis is typically associated with aging, genetics and weight. Plaintiff was determined to be obese, and Dr. Kabir indicated that plaintiff's weight was a contributing factor to her condition. Dr. Kabir also saw plaintiff on May 6, 2003. Plaintiff's symptoms were greater at her May examination than in April.
10. Dr. Kabir opined that plaintiff had pre-existing osteoarthritis that by history from plaintiff was aggravated by her fall at work. Dr. Kabir explained, however, that there was no objective evidence of injury from the fall and that regular movement, such as walking, bending, stooping, and getting out of the car by plaintiff, who weighed more than 290 pounds, would daily aggravate her arthritis. Therefore, Dr. Kabir could not state that plaintiff would not have had the same symptoms if she had not fallen and there is no reasonable way to determine what pain or symptoms plaintiff developed because of the fall.
11. Plaintiff was first seen by Dr. Montgomery at Raleigh Orthopaedic Clinic in September 2003. Dr. Montgomery referred plaintiff to Dr. Albright, an orthopaedic surgeon at Raleigh Orthopaedic Clinic. Dr. Albright testified that when he first saw plaintiff on October 7, 2003, she was complaining of mild left hip and groin pain. Dr. Albright diagnosed plaintiff with left hip osteoarthritis and recommended left hip replacement surgery. Dr. Albright performed left hip replacement surgery on March 31, 2004. Dr. Albright also performed left knee replacement surgery on June 16, 2004. Based on the hypothetical question requiring Dr. *Page 6 
Albright to assume that plaintiff had non-symptomatic osteoarthritis with no history of significant hip, arm or back pain before the February falling incident, Dr. Albright testified that the history of incitement of pain following the incident would indicate that this event aggravated her pre-existing arthritis. Dr. Albright, however, questioned the accuracy of the hypothetical question with the comment that he would be surprised that plaintiff did not have pain in her hip, knee, or back before she fell. In addition, Dr. Albright explained that people with arthritis usually get worse, whether they fall or not and that he could not state that plaintiff would not have had the same medical treatment if she had not fallen. And, if her condition was worsened from the fall, Dr. Albright could not state how long her condition was worsened from the fall. The questionable relationship of plaintiff's condition to her fall at work is further evident by the fact that Dr. Albright did not treat her case as a workers' compensation claim and billed her general health insurance for her medical treatment, despite the fact that Raleigh Orthopaedic Clinic routinely sees and treats patients for workers' compensation claims.
12. The left hip replacement surgery and left knee replacement surgeries were performed to correct plaintiff's pre-existing osteoarthritic joints. Dr. Albright explained that the surgery was not for any anatomical problem to plaintiff's hip and/or knee that he could attribute to her purported fall in February 2003. A fall can cause a fracture or other damage to the joint; however, in plaintiff's case no sign of traumatic injury was observed in performing the hip and knee replacement surgeries. Dr. Albright explained that plaintiff's condition necessitating surgery was caused by genetics.
13. Plaintiff continued to work for defendant from February 25, 2003 until she went out for surgery in March 2004 and returned to work for defendant doing the same work, as a traveling reading teacher, in November 2004. *Page 7 
14. Plaintiff's medical treatment was paid for by the State Health Plan and plaintiff received short-term disability benefits through her employer from May 2004 to November 2004, when she returned to work.
15. On July 20, 2004, plaintiff filed her claim for workers' compensation benefits in this case. Plaintiff's Form 18, Claim for Compensation, was her first written notice to defendant that she contends that she was injured on the job on February 25, 2003.
16. Plaintiff's Form 22 wage report indicates that in the 52 weeks prior to her work-related injury, plaintiff earned $45,709.55. This yields an average weekly wage of $879.02 and a compensation rate of $586.31.
17. Dr. Albright released plaintiff to return to work from her left hip and left knee surgeries in November 2004, knowing that she was returning to work as a teacher in the same job position that she performed before her surgery, which required her to travel from school to school. Dr. Albright expressed that plaintiff reached maximum medical improvement for her left hip and knee conditions at approximately one-year post surgery.
18. Plaintiff has also developed right hip pain where she also has osteoarthritis and has complaints of back pain. Dr. Albright declined to relate plaintiff's right hip problems to the fall in February 2003 stating that the "linkage is sometimes questionable" and that he has not formed an opinion concerning causation of plaintiff's back and right hip problems.
19. In May 2006, Dr. Albright again took plaintiff off from work for a three-month period with the suggestion that when she returned to work she should do her job in one school as opposed to traveling to several schools daily. Dr. Albright believes that plaintiff can return to work as a teacher, provided the position does not require her to travel from school to school each day. *Page 8 
20. Martha Freeman is the Administrator of defendant's Employee Benefits Section of its Human Resources Department. In this position, Mrs. Freeman handles claims for disability and retirement benefits and she supervises the workers' compensation specialist for defendant. She testified that the school district did not have notice of plaintiff's injury until they received plaintiff's Form 18 on or about July 30, 2004. At this time, an investigation was performed by Ashley Hastings, the workers' compensation specialist for defendant, and Key Risk, the third-party administrator for defendant.
21. On August 19, 2004, a Form 19 was filed by defendant. The Form 19 states that defendant had no knowledge of the injury before July 30, 2004.
22. Ms. Freeman testified that prior to July 2004, she assisted plaintiff in her claim for short-term disability benefits for the time period that Plaintiff was off from work from March 2004 through November 5, 2004. Plaintiff did not inform Ms. Freeman that she was injured at work or that her disability or injury was related to work. Mrs. Freeman indicated that if plaintiff had told her that her condition was related to work she would have referred plaintiff to Ashley Hastings to complete the necessary workers' compensation paperwork.
23. Mrs. Freeman also testified that North Carolina Industrial Commission Form 17 is posted in each school, and teachers annually receive information on how to report on-the-job injuries. In addition, Mrs. Freeman explained that the late notice to defendant made it difficult to evaluate plaintiff's claim because any sign of visible injury and the ability to provide medical care to evaluate her claim was denied with the more than 17 month delay between the date of injury and the report of injury.
24. In addition, Mrs. Freeman testified that she has assisted plaintiff in filing for disability benefits in 2006 while plaintiff was taken out of work by Dr. Albright for arthritis in *Page 9 
her right hip. Mrs. Freeman had received Dr. Albright's deposition in this case, where Dr. Albright expressed that plaintiff could return to work as a teacher in a position where she did not have to travel from school to school on a daily basis and sought a teaching position within plaintiff's teaching qualifications, which did not require travel between schools. On August 15, 2006, David Gammon, the Director of Elementary School Staffing for defendant, wrote plaintiff a letter offering plaintiff a teaching position at Wakelon Elementary School. Plaintiff has not accepted the position. Mrs. Freeman testified that the position was a regular job within plaintiff's teaching certification and that the position remains open for plaintiff despite plaintiff's prior refusal to accept the position.
25. The extent of injury from plaintiff's fall of February 25, 2003, is unknown and cannot be determined from the evidence. First, the only witness to the fall, Jacqueline Smith, was not aware of any bruises, abrasions, or problems with plaintiff's clothing from the fall. Second, there is no medical evidence of bruises, abrasions, or other physical damage to plaintiff's body from the fall. Third, Dr. Haas, Dr. Kabir, and Dr. Albright are consistent in their position that plaintiff had symptomatic osteoarthritis in her hip and other parts of plaintiff's body that pre-existed the February 2003 fall, and that normal everyday activities such as walking can aggravate this condition and cause it to become worse. Fourth, Ms. Smith reported that plaintiff complained about left knee pain after the fall, however, plaintiff did not report left knee pain to Dr. Haas or Dr. Kabir. Rather, plaintiff's initial complaints of pain after the incident centered in her left hip. Fifth, plaintiff reported to Dr. Haas and Dr. Kabir that she had pain prior to her fall in February 2003 and Dr. Albright was skeptical about the implication that she had no significant arthritic pain prior to the fall. Finally, Dr. Albright testified that he could not state that plaintiff would not have had the same treatment absent the fall, that he would have been surprised if *Page 10 
plaintiff did not have pain from her osteoarthritic conditions prior to the fall, and that osteoarthritic patients generally get worse, even without other trauma. Therefore, the greater weight of the competent evidence does not establish the nature and degree of the injury, if any, sustained from the fall at work.
26. Plaintiff has osteoarthritis most likely caused by genetics and her excessive weight. The competent medical evidence is that plaintiff was suffering with pain from her osteoarthritis prior to the February 25, 2003 fall at work, and that her condition was such that it was reasonable to expect that her arthritic condition would naturally get worse. The undersigned accepts the testimony of Dr. Albright to the effect that he could not state that plaintiff would not have had the same treatment if she had not fallen and that he could not state how long her condition was worsened from the fall.
27. The greater weight of the competent evidence fails to establish that plaintiff's right hip and back conditions were caused or aggravated by the fall at work on February 25, 2003.
28. Plaintiff did not give written notice of her injury to defendant until July 20, 2004, more than 16 months after her fall. Notice of injury was not given until after plaintiff had her March 2004 total hip replacement, her June 2004 total knee replacement, and after she had filed for and received short-term disability benefits through defendant's benefits office. Dr. Albright testified that in September 2003 it was too late to observe bruises, abrasions, or other signs of injury from the February fall; therefore, notice of injury to defendant 10 months later clearly prejudiced defendant's ability to investigate the claim. Plaintiff gave insufficient justification for delay in giving notice of her injury until July 20, 2004. The Industrial Commission Form 17 was *Page 11 
present in the schools where plaintiff taught as well as in the central offices for defendant and each year the schools reviewed the procedures for reporting job injuries with its teachers.
29. Plaintiff's late reporting has prevented defendant from performing its usual investigation and to have plaintiff examined by a competent physician of their choice at or near the time of injury to determine the nature and extent of her injury from the fall. Defendant reasonably attempted to investigate the claim before the denial of benefits and their denial is reasonable.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. This is a denied workers' compensation claim. Plaintiff bears the burden to prove the compensability of her claim and the extent of her injury. Johnson v. Southern Tire Co., 358 N.C. 701, 706-07, 599 S.E.2d 508,512-13 (2004).
2. Plaintiff experienced an accident on February 25, 2003 when she fell on ice at work. N.C. Gen. Stat. § 97-2(6). Before this incident, plaintiff suffered from pre-existing osteoarthritis in several joints including her left hip and knee. From a preponderance of the evidence it appears that plaintiff may have aggravated her left hip and/or knee in the fall on February 25, 2003. Plaintiff did not seek medical attention for more than a month after the accident, and no doctor took her out of work in 2003 for her injuries. In March 2004, Dr. Albright took plaintiff out of work for her hip replacement and then knee replacement surgeries. Dr. Albright, however, did not testify that these surgeries were necessary because of the fall on February 2003. Rather, Dr. Albright stated that plaintiff's conditions which required surgery were most likely caused by genetics. There were no objective signs of injury from the fall *Page 12 
according to Dr. Kabir and Dr. Albright. Even if the fall aggravated plaintiff's pre-existing condition, Dr. Albright could not state that she would not have had the same treatment without the fall and he could not state how long the aggravation from the fall worsened her condition. Therefore, plaintiff has not established disability from the compensable injury. N.C. Gen. Stat. §§ 97-2(9), 97-29.
3. Plaintiff has failed to establish that her back and right hip conditions are related to her February 25, 2003 accident. In addition, plaintiff has failed to establish that her period of disability in 2006 for her right hip condition is related to the February 25, 2003 accident. N.C. Gen. Stat. §§ 97-2(9), 97-29.
4. Plaintiff did not give written notice of her injury to defendant until she completed her Form 18 on July 20, 2004. Although plaintiff has asserted that she failed to file her workers' compensation claim earlier because she did not know that she needed to file it and because she did not know the seriousness of her injuries, these assertions are not persuasive. As early as March 31, 2003, plaintiff was telling her medical providers that her pain increased six weeks earlier, a timeframe that is consistent with her fall. Plaintiff's notice is untimely pursuant to N.C. Gen. Stat. § 97-22 of the Act, which provides:
 . . . the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the terms of this Article prior to giving such [written] notice . . .
N.C. Gen. Stat. § 97-22. The purpose of this provision is to allow defendant the opportunity to investigate the claim and to provide immediate medical care. Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979). Therefore, plaintiff is not entitled to payment for any medical care or any compensation for any periods of disability prior to July 30, 2004 when defendant first received written notice of injury from plaintiff. *Page 13 
5. Plaintiff's late notice of injury has prejudiced defendant's ability to investigate this claim and to provide prompt medical attention. N.C. Gen. Stat. § 97-22. Because timely notice was not given, defendant was deprived of the ability to provide prompt medical care, which could have revealed bruises, abrasions, or other signs of injury, and could have allowed defendant to adequately identify the parts of plaintiff's body, if any, that were injured in the fall and the extent of injury. Plaintiff's claim is therefore barred for failure to give timely notice. N.C. Gen. Stat. § 97-22.
6. Defendant has reasonably denied plaintiff's claim for late notice and for the inability to determine the nature and extent of injuries, if any, sustained from the February 25, 2003 accident.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is DENIED.
2. Defendants shall bear the costs. This shall include payment of an expert witness fee to Dr. Kabir in the amount of $400.00.
This the 14th day of June, 2007.
 S/ _____________
 BUCK LATTIMORE
 CHAIRMAN
CONCURRING:
S/ _____________ DIANNE C. SELLERS COMMISSIONER
S/ _____________ PAMELA T. YOUNG COMMISSIONER *Page 1